IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**CHAD ALAN RAMSEY,**

    **Petitioner,**

v.

**BRIAN BELLEQUE,**

    **Respondent.**

Civil No. 03-193-BR

OPINION AND ORDER

    **DENNIS N. BALSKE**
222 SW Columbia, Suite 1600
Portland, OR 97201

    Attorney for Petitioner

    **HARDY MYERS**
Attorney General
**YOULEE YIM YOU**
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301

    Attorneys for Respondent

1 - OPINION AND ORDER -

**BROWN, Judge.**

Petitioner, an inmate at the Oregon State Penitentiary, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Court conditionally **GRANTS** the Petition for Writ of Habeas Corpus.

## BACKGROUND FACTS

Petitioner was charged with robbing and shooting the victim, John Kachaturian, on November 16, 1993. At trial, Kachaturian testified that he and Petitioner had been partners in the sale of methamphetamine. Kachaturian used the money he made selling drugs to fund a legitimate business of buying and repairing cars for resale. On May 25, 1993, Kachaturian was arrested for possession and delivery of methamphetamine, and he later pleaded guilty to delivery of a controlled substance. After Kachaturian's arrest, his friendship with Petitioner faltered, and by November of 1993 he was no longer selling drugs with Petitioner.

According to Kachaturian, Petitioner borrowed his car trailer three days before the shooting. On the day he was shot, Kachaturian contacted two mutual acquaintances, Scott Garrison and Keith Richardson, and asked them to tell Petitioner to return the trailer. Kachaturian testified that Petitioner showed up at Kachaturian's car lot driving a van that belonged to Garrison. Petitioner enticed Kachaturian into the van, pulled a gun and

ordered Kachaturian to take off his coat and empty his pockets. Kachaturian removed his coat, took his keys and $1,180 out of his pockets, and put them on the dashboard. Petitioner, still holding the gun, started the van. Kachaturian jumped out, and Petitioner shot him in the leg and fled.

Petitioner's account differs. Petitioner testified that while he and Kachaturian were partners, he "fronted" a large quantity of drugs to Kachaturian for sale. When Kachaturian was arrested in May 1993, he told Petitioner that police seized all the drugs. Petitioner checked police reports, and found only a small amount was confiscated. Petitioner concluded Kachaturian sold the rest and kept the proceeds. Petitioner testified that on November 14, 1993, Kachaturian fronted him $2,500 worth of drugs, which Petitioner did not intend to pay for because he believed Kachaturian still owed him a larger sum. Two days later, Kachaturian summoned Petitioner to the car lot, and when Petitioner arrived, threatened Petitioner and pulled a gun on him. Petitioner grabbed the gun, and during the ensuing struggle he struck Kachaturian in the face, and the gun fired, striking Kachaturian in the leg.

The bullet entered Kachaturian's leg at a downward angle three to four inches below his buttocks and came out just above his knee. After the shooting, Kachaturian was taken to the hospital. When police questioned him there, he claimed he did not

use drugs. Blood tests at the hospital, however, showed he tested positive for both marijuana and methamphetamine.

At trial, Kachaturian admitted that he used drugs, but denied that he was currently dealing. In response, the defense called Robert Meeker to testify that Kachaturian was still dealing drugs after his May 1993 arrest. Although Meeker testified that he worked for Kachaturian from June through December of 1993, the prosecution offered evidence of Meeker's felony convictions for purposes of impeachment, specifically, Meeker's 15-year armed career criminal federal conviction and his 13-15 state felony convictions. The prosecution also proved Meeker had met Petitioner in jail.

When police arrived at Kachaturian's car lot after the shooting, they searched the sales office. During a cursory search they found drug records with quantities and names. At trial, Kachaturian testified the records were from six months before, and that he had been cleaning out a storage unit and left them in his office. Officer Clayton Coreson testified that Kachaturian's nephew, who was present at the car lot during the search, appeared to be high on drugs and his pager kept going off. From these facts, Coreson testified he presumed drugs were being sold.

Scott Garrison testified he loaned Petitioner a van on the day of the shooting. Petitioner did not return the van, and Garrison later retrieved it from a house occupied by people

4 - OPINION AND ORDER -

Petitioner knew.  Inside the house, Garrison found Kachaturian's coat containing his hearing aid and a set of keys.  Garrison found another set of keys belonging to Kachaturian inside the van.  Garrison gave these items to Kachaturian's wife.

Detective James Rawlins testified that he examined the van after it was recovered, and found no broken glass, bullet holes, or bullet casings inside.  Rawlins interviewed Kachaturian the day after the shooting, and saw no injuries on his face.

Kachaturian's wife testified that on the night of the shooting, Petitioner came to her house looking for Kachaturian.  She described him as anxious and agitated, and when he turned around to leave after she told him Kachaturian was not home, she saw what appeared to be a gun.

In closing argument, the prosecutor argued Kachaturian was no longer dealing drugs, but defense counsel argued to the contrary.  In rebuttal, the prosecution emphasized that Petitioner needed the jury to believe Kachaturian was dealing drugs and that the incident occurred as part of his drug dealing.

On September 22, 1994, the jury found Petitioner guilty on charges of First Degree Robbery, First Degree Assault, Unlawful Use of a Weapon, and Felon in Possession of a weapon.

On September 28, 1994, Salem Police Officer Tamara Rutter signed an affidavit in support of a search warrant.  The proposed subject of the search was John Kachaturian.  In her affidavit,

Officer Rutter represented that she had used a confidential informant to purchase methamphetamine from Kachaturian at his business on six occasions. These purchases occurred "within" 60 days, 52 days, 46 days, 30 days, 9 days, and 72 hours of September 28, 1994.

A Marion County judge authorized a search warrant to be issued. The warrant was executed and, as a result of the search, Kachaturian was eventually convicted in both state and federal court on numerous drug and weapon charges.

### **PROCEDURAL HISTORY**

On February 17, 1995, the trial judge sentenced Petitioner to consecutive sentences of 58 and 71 months for the robbery and assault convictions, a concurrent 60-month sentence for the unlawful weapon conviction, and a suspended sentence on the felon in possession count.

Petitioner moved for a new trial, alleging the prosecution withheld material impeachment evidence that the victim and primary witness had engaged in illegal drug dealing before and up to the time of trial. In support of his motion, Petitioner offered Officer Rutter's search warrant affidavit. The trial judge, however, denied the motion.

Petitioner then appealed his convictions and the denial of the new trial motion. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.

6 - OPINION AND ORDER -

*State v. Ramsey*, 142 Or. App. 597, 922 P.2d 730, *cert. denied*, 324 Or. 464, 930 P.2d 851 (1996).

Petitioner then filed a petition for state post-conviction relief ("PCR") and an amended petition. Petitioner also moved to file a second amended petition. The PCR trial judge denied relief on the claims alleged in the amended petition, and denied Petitioner's motion to file a second amended petition. Petitioner appealed, and the Oregon Court of Appeals held the trial judge abused its discretion in denying the motion to amend, but otherwise affirmed the court's order denying the amended petition. *Ramsey v. Thompson*, 162 Or. App. 139, 986 P.2d 54 (1999). The Oregon Supreme Court denied review. *Ramsey v. Thompson*, 329 Or. 589, 994 P.2d 130 (2000).

On remand, Petitioner filed a second amended PCR petition, which was also denied. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *Ramsey v. Palmateer*, 183 Or. App. 146, 52 P.3d 449, *rev. denied*, 335 Or. 114, 61 P.3d 256 (2002).

Petitioner filed this action on February 12, 2003. In his Petition, he alleged numerous grounds for relief. In his Memorandum in Support of Habeas Corpus Petition, however, Petitioner concedes Respondent's argument that he procedurally defaulted all but one claim. Accordingly, the sole remaining issue before this Court is Petitioner's allegation that the

prosecution withheld critical impeachment evidence from him at his trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

## LEGAL STANDARDS

A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he demonstrates that the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 1172-75 (2003).

A state court acts "contrary to ... clearly established Federal law" if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000). An "unreasonable application of clearly established Federal law" occurs if a state court identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the prisoner's case or unreasonably

refuses to extend the governing legal principle. *Williams*, 529 U.S. at 412; *Ramdass*, 530 U.S. at 166.

When the state court does not issue an opinion or otherwise supply the reasoning for a decision, federal habeas review is not *de novo*. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). Instead, this court considers whether the state decision was "objectively reasonable" after conducting an independent review of the record. *Id*.

## DISCUSSION

Under clearly established Supreme Court precedent, "'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Brady*, 373 U.S. at 87). This duty applies to impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). It also encompasses evidence known only to the police: "In order to comply with *Brady*, . . . 'the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf . . ., including the police.'" *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)).

There are three elements to a *Brady* claim: (1) the evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be "material," *i.e.*, prejudice must have ensued from its non-disclosure. *Banks*, 540 U.S. at 591.

Evidence is "material" under *Brady* if "there is a reasonable probability, that had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (quoting *Bagley*, 473 U.S. at 667). "The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusion." *Strickler*, 527 U.S. at 290. Instead, "the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id*. (quoting *Kyles*, 514 U.S. at 435).

The Ninth Circuit recently considered a *Brady* claim based upon the prosecution's failure to disclose impeachment evidence in *Horton v. Mayle*, --- F.3d ---, 2004 WL 3327643 (9th Cir. May 10, 2005). In *Horton*, the state failed to disclose a deal between police and the state's primary witness under which the witness

agreed to testify in exchange for immunity for anything he had done in connection with the crime. The court concluded the state's failure to disclose the deal undermined confidence in the outcome of the trial for two reasons: (1) the witness's testimony was central to the prosecution's case; and (2) the deal would have provided powerful and unique impeachment evidence demonstrating that the witness had an interest in fabricating his testimony. *Horton*, 2004 WL 3327643 at *6.

As the court characterized it, the witness's "testimony was the glue that held the prosecution's case together." *Id*. Moreover, the prosecutor's emphasis on the importance of the witness's testimony in his closing argument bolstered the conclusion that disclosure of the deal "may have significantly damaged the prosecution's case." *Id*. at *7. (citations omitted).

Here, evidence that Kachaturian was actively selling methamphetamine to an undercover drug informant for the Salem Police Department at the time of trial was certainly exculpatory. The evidence would not only have impeached Kachaturian's testimony that he had stopped dealing drugs, it would also have directly supported Petitioner's defense that Kachaturian fronted Petitioner drugs and was going to shoot him for refusing to pay. Indeed, the prosecutor repeatedly emphasized to the jury that in order for Petitioner's defense to succeed, the jury needed to believe Kachaturian was not dealing drugs. Direct evidence to the

contrary, if disclosed to the jury, "may have significantly damaged the prosecution's case."

The new evidence that Kachaturian was actively dealing drugs at the time of trial places the legitimacy of Petitioner's trial in such a questionable light as to undermine any confidence in the jury's verdict. As such, the prosecution's failure to disclose the evidence violated *Brady*. By failing to grant Petitioner's motion for a new trial on this basis, the state court unreasonably applied clearly established federal law. Accordingly, Petitioner is entitled to relief.

## CONCLUSION

For these reasons, the Court conditionally **GRANTS** the Petition for Writ of Habeas Corpus. Respondent is hereby **ORDERED** to release Petitioner from custody and discharge him from all other adverse consequences of his conviction unless Petitioner is brought to retrial within ninety (90) days of the date the Judgment herein becomes final, plus any additional delay authorized by State law.

IT IS SO ORDERED.

DATED this __10th__ day of June, 2005.

                              __/s/ Anna J. Brown__
                              ANNA J. BROWN
                              United States District Judge